IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS W. PFLASTERER and ROBIN M. PFLASTERER, as Co-Trustees of the THOMAS W. and ROBIN M. PFLASTERER FAMILY TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>RANGE RESOURCES-APPALACHIA, LLC,<br><br>Defendant. | Case No. 2:18-cv-1437-SPB |

## MEMORANDUM OPINION

In this civil action, Plaintiffs Thomas W. Pflasterer and Robin M. Pflasterer (collectively, "Plaintiffs"), acting as Co-Trustees of the Pflasterer Family Trust (the "Trust"), seek an accounting and damages for alleged breach of an oil and gas lease held by the Defendant, Range Resources – Appalachia, LLC (hereafter, "Range" or "Range Resources").[1] Pending before the Court is Range Resources' partial motion to dismiss or, alternatively, stay certain of Plaintiffs' claims. For the reasons that follow, Range's motion will be granted in part and denied in part.

### I. BACKGROUND

On May 29, 2009, Plaintiffs executed an oil and gas lease (the "Lease") in favor of Range Resources relative to a 284-acre parcel of land situated in Washington County, Pennsylvania (the "Property"). Amended Compl., ¶ 8, ECF No. 9; ECF No. 9-2. In 2012, Plaintiffs conveyed the

---

[1] The Court's jurisdiction over this case is predicated on 28 U.S.C. §1332, as there is complete diversity of citizenship between the Plaintiffs and Range Resources.

1

Property and related mineral interests under the Lease to the Trust via quitclaim deeds. *See* Amended Comp., ¶¶12-13, ECF No. 9; *see also* ECF No. 9-3.

Paragraph 27 of the Lease addendum set forth Range's obligations to develop the Property in accordance with a "reasonably prudent operator" standard. Amended Compl. ¶11; ECF No. 9-2 at 8, ¶27. By operation of a Lease modification entered into on August 15, 2010, Range Resources was permitted to include the Property in drilling units larger than 640 acres in size, provided that more than four (4) wells would be drilled. Amended Compl. ¶¶ 40-41; ECF No. 9-9. According to Plaintiffs, this modification ensured that the enlarged size of the drilling unit would not exceed a ratio of one well to every 160 acres. Amended Compl. ¶¶ 41-42; ECF No. 9-9.

On March 2, 2011, Range Resources recorded its "Designation of Unit" establishing the McAdoo Drilling Unit ("McAdoo Unit"). Amended Compl. ¶¶19-20; ECF No. 9-5. The McAdoo Unit totals 640 acres and includes approximately 203 acres of the Plaintiffs' Property. Amended Compl. ¶20; ECF No. 9-5.[2] Range has drilled two wells on the McAdoo Unit, both of which were completed and went into production in the latter half of 2011. Amended Compl. ¶¶25-29.

On March 26, 2013, Range Resources recorded its "Designation of Unit" establishing the Dorothy Green Drilling Unit ("Dorothy Green Unit"). Amended Compl. ¶¶30-31; ECF No. 9-8. This unit totals 488.3177 acres and includes approximately 41 acres of the Property. *Id.* Range

---

[2] Range subsequently recorded an "Amended Designation" and "Second Amended Designation" of the McAdoo Unit in November 2012 and August 2013, respectively. Amended Compl. ¶¶21-24, ECF Nos. 9-6 and 9-7. These amended designations did not modify either the overall size of the McAdoo Unit or the inclusion of the subject Property in that drilling unit.

2

has drilled three wells on the Dorothy Green Unit, all of which began producing hydrocarbons in 2013. Amended Compl. ¶¶32-36.

The hydrocarbon streams that were collected at the well heads on the McAdoo and Dorothy Green Units were transported to a facility where the hydrocarbons underwent processing to produce natural gas liquids ("NGLs") and residue gas. Amended Compl. ¶¶ 77-78. Both types of products were then sold by Range and royalties were paid on the sales of each product. Amended Compl. ¶¶46, 76.

By virtue of their lease agreement with Range Resources, Plaintiffs are members of a class of lessors who challenged Range's calculation of royalty payments in a civil class action styled *Donald C. Frederick, et al. v. Range Resources-Appalachia, LC*, Case No. 1:08-cv-228 (W.D. Pa.). The underlying dispute in the *Frederick* litigation concerned the extent to which Range Resources could deduct certain post-production costs from the royalties it was paying to class members. As part of the settlement agreement in *Frederick*, the district court entered an order on March 17, 2011 (hereafter, the "*Frederick* Order") that amended the class members' lease agreements so as to impose caps on the amount of post-production costs that Range could deduct. Amended Compl. ¶¶14-15; ECF No. 9-4. In the case of royalties attributable to "Wet Shale Gas production," the *Frederick* Order capped deductions of post-production costs at an amount equal to the lessor's "pro rata royalty share of $0.80 per MMBTU."[3] ECF No. 9-4, ¶1(B)(1)(b)(i). In the case of royalties attributable to "Dry Shale Gas production," the deductions of post-production costs were capped at an amount equal to the lessor's "pro rata royalty share of $0.72 per MMBTU." *Id.* at ¶1(B)(1)(b)(ii). Plaintiffs acknowledge that,

---

[3] The term "MMBTU" refers to one million British Thermal Units.

3

because of their status as class members, the *Frederick* Order modified the payment terms of their own Lease with Range Resources. Amended Compl. ¶16.

Based on the production codes set forth in the check stubs that Range transmitted with its royalty payments, Plaintiffs deduce that Range has been selling gas, natural gas liquids ("NGL's"), and condensates that are attributable to the wells in the McAdoo and the Dorothy Green Units. Amended Compl. ¶46; ECF No. 9-10. According to Plaintiffs, the check stubs contain, among other things, a "deduct code" of "CSW," which is described as "PPC CAP .80/MMBTU." Amended Compl. ¶47; ECF Nos. 9-4 and 9-10. Plaintiffs believe and aver that the "PPC CAP .80/MMBTU" deduction code reflects the $.80 per MMBTU pro rata post-production cap for "Wet Shale Gas" set forth in the *Frederick* Order. *Id.* In addition to the royalty payments, Range issued royalty statements that detailed, among other things, the month of the hydrocarbon production, the type of hydrocarbon produced, the volume of hydrocarbon produced, the value of the hydrocarbon, and any deductions assessed against the price of sale. Amended Compl. ¶45; ECF No. 9-10.

Based upon their examination of these records, Plaintiffs believe that Range neglected or otherwise failed to properly cap its post-production costs relative to the transactions identified in the check stubs that it issued with royalty payments. Amended Compl. ¶48. As a result, Plaintiffs conclude that Range wrongfully reduced the royalty payments that were made to the Trust by essentially taking unauthorized deductions from the Trust's royalties. *Id.* ¶49. Plaintiffs also aver that Range has failed to abide by its drilling obligations under the Lease.*Id.* ¶¶56-58.

Seeking redress of these grievances, Plaintiffs filed the within civil action in the Washington County Court of Common Pleas. ECF No. 1-2. Range Resources removed the action to this Court on October 25, 2018. ECF No. 1.

On November 30, 2018, Plaintiffs filed their Amended Complaint, ECF No. 9, which is presently their operative pleading. Therein, Plaintiffs assert the following four causes of action:

- a breach of contract claim based on Range's failure to drill additional wells in accordance with its alleged obligations under the Lease (Count I);

- a breach of contract claim based on Range's alleged failure to consistently apply the $.80/MMBTU post-production cap for all sales of natural gas produced from the McAdoo and Dorothy Green Units (Count II);

- an alternative breach of contract claim based on the theory that Range should have applied the $.72/MMBTU post-production cap relative to sales of natural gas produced from the McAdoo and Dorothy Green Units (Count III); and

- a claim seeking an accounting of Range's records to determine whether additional discrepancies exist relative to Range's calculation of royalty payments and application of the post-production caps required by the *Frederick* Order (Count IV).

Range Resources filed its pending motion, along with a supporting brief, on December 14, 2018. ECF Nos. 11 and 12. In its motion, Range seeks to dismiss Counts II through IV of the Amended Complaint or, alternatively, dismiss Count III and stay Counts II and IV pending resolution of a post-settlement dispute that is presently being litigated in the *Frederick* case. Plaintiffs filed their response to the motion and opposing brief on January 8, 2019. ECF Nos. 16 and 17. Range filed its reply brief on January 16, 2019. ECF No. 18. As a result of the foregoing submissions, the issues have been adequately joined and Defendant's motion is ripe for adjudication.

## II.  STANDARD OF REVIEW

Defendant's motion to dismiss is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "When considering a Rule 12(b)(6) motion, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether,

5

under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

#### A. Count II

In Count II of the Amended Complaint, Plaintiffs assert that Range Resources breached the terms of the Lease by failing to consistently apply the $.80/MMBTU post-production cap for all sales of natural gas produced from the McAdoo and Dorothy Green Units. Range Resources moves to dismiss Count II on the ground that it is inadequately pled and fails to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure. Range argues that the averments in Count II are mere conclusory allegations that fail to provide fair notice of the basis for Plaintiffs' claim. The Court disagrees.

Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this standard requires more than "labels and conclusions" or a "formulaic recitation of the elements of the cause of action," *Twombly,* 550 U.S. at 555, it does not require "detailed factual allegations." *Id.* To adequately plead their

breach of contract claim, Plaintiffs must plausibly allege: "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

Here, Defendant takes issue only with the second element – breach of a duty imposed by the contract.[4] To fulfill their pleading requirement for this element, Plaintiffs need only proffer "enough fact to raise a reasonable expectation that discovery will reveal evidence of" a breach. *Twombly,* 550 U.S. at 555. To that end, Plaintiffs aver that:

- Defendant has an affirmative duty under the Lease, as amended by the *Frederick* Settlement Order, to limit the amount of post-production costs that can be lawfully deducted from the calculation of Plaintiffs' royalties (Amended Compl. ¶63);

- Based upon their examination of royalty payment stubs, Plaintiffs deduce that Defendant is purporting to apply the $.80/MMBTU cap for royalties attributable to "Wet Shale Gas production" (*id.* ¶65);

- To the extent that the $.80/MMBTU cap is the proper cap to be applied to Plaintiffs' royalties, it appears from Plaintiffs' examination of their statements that the cap is not being uniformly and consistently applied (*id.* ¶66);

- Plaintiffs deduce that Defendant has taken deductions from their royalty payments that exceed the $.80/MMBTU figure (*id.* ¶67); and

- Defendant's neglect and/or failure to comply with the deduction caps is a material breach of the Lease, as amended (*id.* ¶68).

In this Court's estimation, the foregoing averments are sufficient to satisfy Plaintiffs' pleading burden. At this stage of the proceedings, Plaintiffs need not recite each and every instance of an alleged payment deficiency. Accepting their allegations as true, it can reasonably

---

[4] As Range Resources implicitly acknowledges, Plaintiffs have adequately alleged the existence of an enforceable contract in the form of an oil and gas lease. *See T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012) (holding that oil and gas leases are in the nature of contracts). Plaintiffs have also adequately alleged damages in the form of underpaid royalties.

7

be inferred that discovery will reveal evidence of specific underpayments. The Amended complaint gives Range "'fair notice of what [the claim in Count II] is and the grounds upon which it rests.'" *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (ellipsis in the original). Accordingly, Defendant's motion to dismiss will be denied as it relates to Count II of the Amended Complaint.

### B. Count III

In Count III of the Amended Complaint, Plaintiffs assert an alternative theory that Defendant breached their Lease terms by purporting to apply the $.80/MMBTU cap – rather than the $.72/MMBTU cap -- on post-production costs relative to royalties paid on sales of "natural gas." The source of this distinction lies in the *Frederick* Order, which amended the class members' leases so as to differentiate between: (a) royalties attributable to "Wet Shale Gas production" (to which the $.80/MMBTU cap applies), and (b) royalties attributable to "Dry Shale Gas production" (to which the $.72/MMBTU cap applies). The *Frederick* Order defines "Wet Shale Gas" as "natural gas produced from the Marcellus or other shale formation which is processed for the recovery of NGL's prior to delivery into a sales pipeline." ECF No. 9-4 at p. 4, ¶1. By contrast, "Dry Shale Gas" is defined as "natural gas produced from the Marcellus or other shale formation which is *not* processed for the recovery of NGL's prior to delivery into a sales pipeline." *Id.* at 3, ¶1 (emphasis supplied). The parties dispute whether the "natural gas" in question is properly considered "Wet Shale Gas" or "Dry Shale Gas."

As to this issue, the parties offer competing interpretations of the amended lease terms. Both sides appear to agree that the hydrocarbon stream that is drawn from the wells on the McAdoo Unit and the Dorothy Green Unit are transported to a processing facility, where it

undergoes processing for the removal of Natural Gas Liquids ("NGLs"). *See* Amended Compl. ¶77. As set forth in the Amended Complaint, "two (2) products are created from the raw hydrocarbon stream at the natural gas processing facility: a. NGL's; and b. Residue Gas." *Id.* ¶78. Plaintiffs allege that Range sells each of these two products separately and then pays a separate royalty on each type of sale. *Id.* ¶¶76, 79. Plaintiffs infer that the production royalties they receive from sales of "natural gas," as indicated on their royalty statements, are in fact royalties attributable to sales of residue gas. *Id.* ¶79. Because the residue gas has a different chemical composition and is volumetrically distinct from the original hydrocarbon stream of natural gas that is produced at the wellhead, and because the residue gas is not *itself* processed for recovery of NGLs, Plaintiffs posit that the residue gas is properly considered "Dry Shale Gas" under the terms of the *Frederick* Order.

Range Resources insists that this interpretation is untenable in light of the unambiguous language of the *Frederick* Order. Range further argues that Plaintiffs' interpretation would render the "Wet Shale Gas" cap superfluous because only NGLs and Dry Shale Gas will ever be produced from the raw hydrocarbon stream as the result of chemical processing. The viability of Plaintiff's claim at Count III thus turns on an issue of contract interpretation, since the *Frederick* Order incorporated new material terms into Plaintiffs' Lease.

Under Pennsylvania law, the paramount goal of contract interpretation is to ascertain and give effect to the intent of the contracting parties. *Maisano v. Avery*, 204 A.3d 515, 520 (Pa. Super. Ct. 2019) (citation omitted). "[W]here ... the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself." *Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. Ct. 2004). While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are

9

interpreted by the finder of fact. *Kripp v. Kripp*, 784 A.2d 158, 162 (Pa. Super. Ct. 2001), *rev'd on other grounds*, 849 A.2d 1159, 1163 (Pa. 2004). A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Maisano,* 204 A.3d at 520. A determination of ambiguity, however, is not made in a vacuum; instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. *Id.; see Madison Construc. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). For this reason, courts in this judicial district commonly defer matters of contract interpretation until the Rule 56 stage. *See Prime Energy & Chem., LLC v. Tucker Arensberg, P.C.,* No. 2:18-CV-00345, 2019 WL 3778756, at *8 (W.D. Pa. Aug. 12, 2019) (declining to dismiss plaintiff's fraud claim where defendant's argument "necessarily invokes contractual interpretation and is inapposite for purposes of a motion to dismiss, and, rather, more appropriate for potential resolution at the summary judgment stage"); *Masciantonio v. SWEPI LP*, No. 4:13-cv-0797, 2014 WL 4441214, at *6 n.5 (M.D. Pa. Sept. 9, 2014) ("If a writing is not ambiguous, it is appropriate for a district court to resolve the issue of contract interpretation as matter of law, but typically on summary judgment rather than a motion to dismiss." (citing *Butters Living Tr. v. SWEPI, LP,* No. 4:12-cv-02010, 2013 WL 3679533, at *4 (July 12, 2013)); *see also PR Gainesville, LLC v. UP Dev. – Gainesville 500 Acres, LLC*, No. 18-957, 2018 WL 2021076, at *6 (E.D. Pa. May 1, 2018) (declining to dismiss a request for attorney's fees where the disposition of the request involved arguments "requir[ing] contract interpretation best left for summary judgment").

      To prevail on its motion to dismiss, Range Resources must establish, as a matter of law, that the "natural gas" at issue in Count III constituted "Wet Shale Gas" under the unambiguous terms of the Lease, as amended by the *Frederick* Order. Range's argument calls for an analysis

10

of technical contractual terms as those terms are applied and understood within a highly specialized industry. *See Jacobs v. CNG Transmission Corp*., 332 F. Supp. 2d 759, 764 (W.D. Pa. 2004) (noting that "[i]nstruments conveying property rights in minerals such as oil and gas are executed in the context of an industry that is highly technical in nature and employs district terminology used by those involved in the business"). Given the complexity of the underlying contractual dispute and the undeveloped state of the factual record, the Court finds it impracticable to render a dispositive ruling on Range's Rule 12(b)(6) motion. Plaintiffs' theory of contractual breach is at least plausible and, therefore, Range's motion will be denied relative to Count III of the Amended Complaint.

    C. Count IV

In Count IV of the Amended Complaint, Plaintiffs seek an accounting of Range Resource's accounts and records to determine whether additional discrepancies exist relative to Range's calculation of royalty payments and application of the post-production caps. Range moves to dismiss this claim on the ground that no facts have been pled that would support a claim for an accounting.

Under Pennsylvania law, a legal accounting is a potential remedy for separate legal claims, such as breach of contract. *See McWreath v. Range Res.--Appalachia, LLC,* 81 F. Supp. 3d 448, 467-68 (W.D. Pa. 2015), *aff'd,* 645 F. App'x 190 (3d Cir. 2016); *Pollock v. Energy Corp. of America*, Civil Action No. 10-1553, 2011 WL 5977422, at *2 (W.D. Pa. Nov. 29, 2011). Range argues that no valid breach of contract claim has been pled as would justify a legal accounting. The Court disagrees insofar as it has found that Counts II and III of the Amended Complaint state facially plausible claims. Nevertheless, because an accounting is a potential

11

*remedy* for breach of contract claims rather than an independent cause of action, any claim for a legal accounting is moot.

Pennsylvania courts also recognize an equitable basis for an accounting. Notably, however,

> "[a]n equitable accounting is improper where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, or the plaintiff possesses an adequate remedy at law. Equitable jurisdiction does not exist simply because the petitioner desires information." *Rock v. Pyle*, 720 A.2d 137, 142 (Pa. Super. Ct.1998) (citations omitted); *see also Centrix HR, LLC v. On–Site Staff Management*, 349 Fed. Appx. 769, 775 (3d Cir. 2009). Further, "[t]he right to an accounting in equity usually depends on a previous demand and refusal." *Hohman v. Dabulski*, 2009 Pa. Dist. & Cnty. Dec. LEXIS 207 (Allegheny Cty. 2009) (citing 1A C.J.S. Accounting §29). Yet, an equitable accounting claim should not be used as a vehicle to obtain information which would be subject to discovery in a separate civil action. *Pollock*, 2011 WL 5977422, at *2.

*McWreath*, 81 F. Supp. 3d at 468. Here, there is no fiduciary relationship between Plaintiffs and Range Resources, as their relationship is an arms-length contractual one. In addition, no allegations of fraud or misrepresentation have been raised, and Plaintiffs appear to have an adequate remedy at law. And, despite the fact that the Lease affords the Trust a right to inspect Range's books and records, no request for inspection -- or refusal -- has occurred. In light of these circumstances, an equitable accounting is inapposite here.

In sum, the Court recognizes a legal accounting as a potential form of relief relative to Counts II and III of the Amended Complaint. However, the claim in Count IV will be dismissed inasmuch as there is no independent stand-alone cause of action for a legal accounting, and no basis exists to support an equitable accounting.

D. Motion to stay

As an alternative to dismissal, Range Resources seeks a stay of Count II due to the pendency of post-settlement litigation in the *Frederick* case.[5] In January 2018, the class in *Frederick* filed a motion to enforce the class settlement based upon the allegation that Range was not properly applying the post-production caps that had been agreed to as part of the settlement terms. The class's principal contention, among others, was that Range had miscalculated and misapplied post-production caps using an incorrect formula that was based upon MMBTUs, rather than MCFs.[6] Because the *Frederick* settlement agreement had defined the agreed-upon caps in terms of MCFs, but the *Frederick* Order defined the caps in terms of MMBTUs, the class subsequently filed a Rule 60 motion to conform the *Frederick* Order to the terms of the *Frederick* settlement agreement.

In moving for a stay, Range argues that the *Frederick* litigation addresses the same issues raised in Count II (and, by extension, Count III) of the Amended Complaint. Range asserts that Plaintiffs are already represented by class counsel because of their status as class members; therefore, it is a waste of judicial resources and serves no useful purpose to allow them to pursue individualized claims.

Plaintiffs counter that this Court lacks ancillary jurisdiction over the *Frederick* settlement litigation because of the length of time that has elapsed since the 2011 settlement. To the extent

---

[5] Range did not move for a stay of Count III because it maintains that that claim should be dismissed outright. Since the Court is denying Range's motion to dismiss Count III, the Court will consider the merits of a stay as it relates to that claim as well. Range's motion to stay Count IV is denied as moot, as that claim is being dismissed.

[6] An MCFs refer to a unit of measurement equaling one thousand cubic feet.

jurisdiction is present, Plaintiffs argue that a stay is inappropriate because the claims in this litigation are not substantially identical to the claims being litigated in the *Frederick* case.

"Plaintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit, and federal district courts have discretion to enforce that requirement as necessary to avoid duplicative litigation." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 34 (2012) (Alito, J., dissenting) (internal quotation marks and citation omitted); *see Walton v. Eaton Corp*., 563 F.2d 66, 70 (3d Cir. 1977) (plaintiff "had no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.") (citations omitted). Accordingly, when a plaintiff files a second action which is "substantially identical to a pending case," the district court may "stay the second case, consolidate it with the first case, or dismiss the second case without prejudice." *Yost v. Anthem Life Ins. Co*., No. 3:18-CV-1522, 2019 WL 3451507, at *3 (M.D. Pa. July 30, 2019) (citing *McKenna v. City of Phila.*, 304 F. App'x 89, 89 (3d Cir. 2008), and *Walton*, 563 F.2d at 70-71).

Here, the Court finds that the claims asserted in the Amended Complaint are not identical to those raised in the *Frederick* post-settlement litigation. Whereas the Plaintiffs in this action take issue with Range's failure to drill additional wells and alleged failure to consistently apply the relevant MMBTU cap, the *Frederick* class takes issue with *any* use of an MMBTU cap, as well as sundry other discrepancies not raised here. The questions specifically raised in this case – i.e., whether Range had an obligation to drill more wells on the McAdoo and Dorothy Green Units, whether the natural gas attributable to those Drilling Units that Range sold is properly characterized as "Wet Shale Gas" or "Dry Shale Gas," and whether Range consistently applied the relevant MMBTU cap on post-production costs in each particular instance where royalties were paid to the Trust – are not necessarily issues of class-wide concern.

14

That being said, the Court notes that, since the filing of the pending motion, the parties in the *Frederick* case have reached a potential "supplemental" settlement, which is now before the undersigned on a motion for approval of same. As part of the settlement, class members would be deemed to have accepted broadly worded release terms that could potentially impact the breach of contract claims in Counts II and III of the Amended Complaint.[7] *See Frederick, et al. v. Range Resources-Appalachia, LLC,* Case. No. 1:08-cv-288 (W.D. Pa.) (ECF No. 135-1, ¶4). Plaintiffs are admittedly members of the class, and it does not appear that they have objected to the proposed settlement. Under these circumstances, the Court is inclined to grant Range's motion to stay the breach of contract claims in Counts II and III, pending resolution of the motion to approve the supplemental settlement in *Frederick.*

As for Plaintiff's argument that this Court should not exercise ancillary jurisdiction in *Frederick,* the Court notes that the Honorable Cathy Bissoon previously presided over that civil action and found the exercise of ancillary jurisdiction to be appropriate. *See Frederick v. Range Resources – Appalachia, LLC,* No. 1:08-cv-288 (W.D. Pa.) (Order dated July 26, 2018, ECF No. 105). Of course, the issue of subject-matter jurisdiction cannot be waived, and a district court must dismiss a case at any juncture, even *sua sponte*, if jurisdiction is found to be lacking. Fed. R. Civ. P. 12(h)(3). But to the extent that Plaintiffs' arguments against a stay depend on an assessment of jurisdiction in the *Frederick* case, the Court will not presently undertake that analysis in the context of this civil action. Jurisdictional challenges have been raised in the *Frederick* case in connection with the motion for approval of the supplemental class settlement, which is now pending before the Court. Those jurisdictional questions will be resolved in due

---

[7] To be clear, the Court is not making any determination in this regard at present.

course once briefing in the *Frederick* case is complete.  At present, it is sufficient for the Court to find that a stay of Counts II and III is warranted, due to the potential impact that settlement of the *Frederick* case may have upon those claims.

## IV.     CONCLUSION

Based upon the foregoing reasons, Range Resources' partial motion to dismiss will be granted as to Count IV of the Amended Complaint and denied as to Counts II and III.  Range's motion to stay will be granted as to Counts II and III of the Amended Complaint and dismissed as moot relative to Count IV.

An appropriate Order follows.

 

*/s/ Susan Paradise Baxter*
SUSAN PARADISE BAXTER
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THOMAS W. PFLASTERER and ROBIN M. PFLASTERER, as Co-Trustees of the THOMAS W. and ROBIN M. PFLASTERER FAMILY TRUST,** )<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:18-cv-1437-SPB |
| Plaintiffs, ) | |
| v. ) | |
| **RANGE RESOURCES-APPALACHIA, LLC,** )<br>)<br>) | |
| Defendant. ) | |

## ORDER

NOW, this  5th  day of   September  , 2019, upon consideration of the Partial Motion to Dismiss or, in the Alternative, Motion to Stay filed by Defendant Range Resources-Appalachia, LLC, ECF No. [11], and all documents related thereto,

IT IS ORDERED, for the reasons set forth in the accompanying Memorandum Opinion, that the motion to dismiss shall be, and hereby is, GRANTED as to Count IV of the Amended Complaint and DENIED as to Counts II and III of the Amended Complaint.  IT IS FURTHER ORDERED that the motion to stay shall be, and hereby is, GRANTED as to Counts II and III of the Amended Complaint and DISMISSED as moot relative to Count IV of the Amended Complaint.

In accordance with the foregoing, all proceedings relative to Counts II and III of the Amended Complaint shall be, and hereby are, STAYED pending further Order of this Court.

1

_____
SUSAN PARADISE BAXTER
United States District Judge

2